UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-05549-MWC-DMK **(ADELANTO)** Date: September 29, 2026

Title: Jose Antonio Castellanos Franco v. Warden, Adelanto ICE Processing Center, *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: N/A | Attorneys Present for Defendants: N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING PETITIONER JOSE ANTONIO CASTELLANOS FRANCO'S (A No. 246-062-055) *EX PARTE* EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER; ORDERING IMMEDIATE RELEASE (DKT. [1])**

Before the Court is *pro se* Petitioner Jose Antonio Castellanos Franco's ("Petitioner")[1] *Ex Parte* Emergency Application for Temporary Restraining Order ("Application") seeking a temporary restraining order ("TRO") ordering Respondents[2] to immediately release Petitioner from custody. *See* Dkt. # 1 ("*Appl.*") at 23. Respondents filed a response, arguing that Petitioner is "at most" entitled to a bond hearing before an Immigration Judge, and that Respondents further oppose release "because this is the first detention of a long-term interior resident." Dkt. # 10 ("*Opp'n*") at 2.

The Court issued a standing order on September 22, 2026, enjoining Petitioner's removal from the District pending further orders from the Court, and setting a briefing

[1] Because Petitioner is proceeding *pro se*, the Court is "obligated to liberally construe [his] documents," looking "to the contents of [his] filing[s] rather than [their] form." *Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) (cleaned up), *cert. pet. granted sub nom. Nielsen v. Watanabe*, No. 25-417 (June 22, 2026); *Ross v. Williams*, 950 F.3d 1160, 1173 n.19 (9th Cir. 2020) (same).

[2] The habeas petition and TRO Application list Respondents as: Ernesto Santacruz (Field Office Director of Los Angeles Immigration and Customs Enforcement ("ICE") Office); Todd M. Lyons (Acting Director of ICE); Mark W. Mullin (U.S. Secretary of Homeland Security); and Todd Blanche (Attorney General of the United States).

schedule on Petitioner's Application. *See* Dkt. # 7. For the reasons set forth below, the Court **GRANTS** the Application.

## I. Background

### A. Form I-213

Respondents submitted a copy of Petitioner's Form I-213 ("Form") as an exhibit to their Opposition brief. *See* Ex. to *Opp'n*, Dkt. # 10-1 ("*Form I-213*"). The Form notes that Petitioner is from Guadalajara, Jalisco, Mexico and is thirty-eight (38) years old. *See id.* at 1. The Form notes that Petitioner's parents are both from Mexico and that Petitioner entered the United States on an unknown date and time and without inspection. *Id.* The Form indicates that Petitioner does not have an immigration status. *Id.*

According to the Form, on July 13, 2026, ICE Officers conducted a field operation in Ventura, California to locate and apprehend Petitioner. *Id.* at 2. Officers knew that Petitioner was being released from Ventura County Jail, and at approximately 10:40 a.m., ICE Officers arrived at the Ventura County Jail Lobby, wearing "approved, highly visible POLICE ICE identifying patches on their issued body armor." *Id.* (capitalizations in original). At approximately 10:45 a.m., Petitioner was released from jail and officers conducted an investigatory stop. *Id.* Officers then interviewed Petitioner, who identified himself with his name and date of birth. *Id.* at 3. Petitioner then admitted to being a citizen and national of Mexico and admitted to entering the United States without any legal status. *Id.* Based on his admissions, ICE Officers arrested and detained Petitioner. *Id.* Officers thereafter served Petitioner with a Notice to Appear and Warrant for Arrest of Alien. *Id.*

### B. Petition & TRO Application

#### *i. Personal Background*

The Petition states that Petitioner is thirty-nine years old and is "a national citizen of Mexico." *See Appl.* at 3.[3] Petitioner's parents abandoned him at four months old, when he was then taken in by his paternal grandparents. *Id.* After the loss of his paternal grandfather, and facing both familial and financial difficulties, Petitioner's maternal

[3] The Court notes that Petitioner has combined both his habeas petition and TRO Application in one document. For ease of reference, the Court cites to both documents as the Application ("*Appl.*").

grandmother brought Petitioner to the United States in April 2002, when Petitioner was fourteen years old. *Id.* Petitioner has never departed since. *Id.*

Upon his arrival to the U.S., Petitioner enrolled in education. *Id.* Because he lacked sufficient family support and economic hardships, Petitioner dropped out of school by eleventh grade. *Id.* At that point, Petitioner dedicated himself to hard labor; he remained steadily employed and filed taxes. *Id.*

At some point, Petitioner was kicked out of his home and sent far away from his family's support. *Id.* Petitioner sought refuge with people who exposed him to negative influences, substances, and encounters with law enforcement. *See id.* In around 2007, Petitioner failed a police-administered urine exam, which resulted in Petitioner spending two days at the Ventura County Jail. *See id.* After his release, Petitioner enrolled in a substance abuse program, to which he could not complete due to financial difficulties. *Id.* Petitioner also served a sixty-day sentence. *Id.* at 4. Petitioner then voluntarily entered a recovery home called "Victory Outreach," which houses hundreds of rehabilitated people who become followers of God. *Id.* While there, Petitioner participated in many Seminaries, Conventions, and Church retreats, eventually graduating from the program. *Id.* Petitioner worked with former gang members where he preached the teachings of God and provided them with counsel during difficult times. *Id.*

After his rehabilitation, Petitioner met his first wife. *Id.* The couple divorced after four years. *Id.* During the divorce, Petitioner met the mother of his children, with whom he has both a son and daughter. *Id.* Both of his children are U.S. citizens. *Id.* Petitioner's youngest child was born with a cataract, which led to her recently becoming blind in one of her eyes and requiring extensive medical treatment. *See id.* at 5. Petitioner's son is diagnosed with Autism Spectrum Disorder and requires 24-hour-a-day care, medication, and special programs to support his development, including occupational therapy, and speech and language therapy. *Id.* at 5–6. Petitioner separated from the children's mother, which resulted in Petitioner contracting high blood pressure and diabetes. *Id.* at 4. Petitioner represents that his detention has been devastating for him and his family because "they have never been apart and are dealing with [e]xtreme [h]ardships." *Id.* at 6.

*ii. Arrest & ICE Detention*

On July 12, 2026, at approximately 11:00 p.m., Petitioner was parked in Oxnard, California, waiting for a call from work. *Id.* As he was waiting in a parking lot, a police vehicle parked right behind him and a stranger entered his car for unknown reasons. *Id.*

Petitioner did not recognize this individual and instructed him to leave his vehicle; Petitioner assumed the stranger was hiding from the police and that this is why he entered Petitioner's vehicle without permission. *See id.* at 4–5.

Once the stranger exited his vehicle, the police officer parked behind him approached Petitioner, questioned him, and began to search his vehicle without his consent. *Id.* The officer arrested Petitioner for unknown reasons. *Id.* Petitioner was taken into custody, questioned about his physical health, and transported to a hospital for a medical evaluation; the medical examination provided negative test results for the use of substances. *See id.* Petitioner was then transported to the police station, and then to the Ventura County Jail, where he was released six hours later. *Id.*

Once released from jail, Petitioner encountered ICE officers, who then placed him in handcuffs. *Id.* Petitioner requested to see a warrant but the officers never showed him one and continued to detain him. *Id.* Petitioner was arrested and taken into custody without either notice or a warrant. *Id.* Officers then transferred Petitioner to the Adelanto ICE Processing Center ("Adelanto"), where has resided ever since. *Id.* Petitioner's immigration court date is scheduled for October 1, 2026. *Id.*

## II. Legal Standards

### A. *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte

applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

B. Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

III. Discussion

A. *Ex Parte* Application and *Mission Power* Factors

Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody for over two months, since July 2026, without receiving a pre-deprivation hearing, an opportunity to contest his detention, or any indication that his removal is likely in the foreseeable future. Petitioner has been unable to earn wages or otherwise provide for his family. Nor has Petitioner been able to engage with his religious community. Petitioner also has diabetes and high blood pressure, and is unable to satisfactorily care for either condition while in detention. And Petitioner has two young children who depend on him for medical assistance and care. If the Court heard the motion according to regularly noticed motion procedures, that would leave Petitioner detained for several additional weeks. Thus, after at over two months in continued detention, *ex parte* relief is warranted.

B. Request for Relief from Detention

*i. Likelihood of Success on the Merits*

Petitioner has demonstrated a likelihood of success on the merits of his request for release from detention. Petitioner argues that immigration authorities deprived him of the protections that the Due Process Clause of the Constitution requires. *See Appl.* at 3–6, 9–14. "Given that due process interests are at stake, [the Court] look[s] to the test outlined in" *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160 (9th Cir. 2004). There, the Supreme Court discussed the need to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Regarding the first factor, Petitioner has a liberty interest in being free from detention. Though Respondents oppose the release of Petitioner because this is his "first detention," as other courts have identified, a petitioner may have a liberty interest in freedom from detention regardless of whether he was previously in ICE detention. *See, e.g.*, *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245 DAD SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026) ("Even assuming petitioner was not previously released at the discretion of immigration officials,[] he has a general liberty interest in freedom from detention."); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Petitioner also has an interest in avoiding prolonged detention. *See Doe v. Becerra*, No. 23-cv-05327-RMI, 2024 WL 1018519, at *5 (N.D. Cal. Mar. 7, 2024) ("As to the first factor, it does not require much to conclude that Petitioner has a compelling interest—to say the least—in avoiding prolonged detention; it is equally evident that the government's

interference with that interest necessarily increases while Petitioner spends more and more time in detention." (citation omitted)). And Petitioner's detention impedes his ability to maintain gainful employment and see and care for his family. Accordingly, Petitioner's private interest in remaining free from detention is significant.

As to the second *Mathews* factor, Respondents maintain that Petitioner is "at most" entitled to a bond hearing and not release. *Id.* at 2. But Respondents ignore both the pre-deprivation safeguards afforded by the Fifth Amendment, and the "extensive procedural protections" afforded by 8 U.S.C. § 1226(a),[4] including "several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022); *Paso v. Warden*, No. 1:26-cv-05885-TLN-CKD P, 2026 WL 2280957, at *2 (E.D. Cal. Aug. 7, 2026). And Respondents' own Form I-213 indicates that authorities did not serve Petitioner with a Notice to Appear and a Warrant for Arrest until sometime *after* his arrest, charge, and booking into custody. *See Form I-213* at 3; *see also Sargento-Ramirez v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-07528-DAD-SCR (HC), 2026 WL 2883476, at *1 (E.D. Cal. Sept. 25, 2026) ("[W]hen the government fails to arrest a petitioner following or contemporaneously with the issuance of a warrant or provide a petitioner with an initial custody determination either prior to or contemporaneously with detention, as required by § 1226(a), immediate release is mandated.") (citation omitted).

"The absence of pre-deprivation procedures creates a high risk of erroneous liberty deprivation." *Gomez Romero v. Wamsley*, No. C25-2207-JHC-MLP, 2025 WL 3628633, at *1 (W.D. Wash. Dec. 8, 2025). Respondents' "failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process." *Rivas Garcia*, 2026 WL 1265937, at *4 (internal citation omitted). For that

[4] As Respondents concede, because Petitioner was living in the United States when he was detained, the applicable detention authority is 8 U.S.C. § 1226. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026) (holding that noncitizens present without admission "who are apprehended in the interior of the United States are subject to the detention regime of § 1226"); *see also Opp'n* at 2.

reason, the second *Mathews* factor counsels in favor of Petitioner's release. *Sargento-Ramirez*, 2026 WL 2883476, at *1.

Still, the Court must consider the government's interests. Though the government has an interest in the steady enforcement of its immigration laws, the government's interest in detaining Petitioner without any procedural protections is slight. *See Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *6 (E.D. Cal. Jan. 5, 2026) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). And custody hearings for immigration detention are routine and impose a "minimal" cost on the government. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, the third *Mathews* factor counsels in favor of granting Petitioner's release from detention.

*ii. Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). While detained, Petitioner cannot see his family, nor can he continue working to earn income to support himself or his loved ones. "Moreover, the Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention,' including 'subpar medical and psychiatric care in ICE detention facilities.'" *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025) (quoting *Hernandez*, 872 F.3d at 999). Petitioner suffers from both diabetes and high blood pressure, and his unlawful detention has imposed severe difficulties on both him and his family. As a result, this factor weighs in favor of granting Petitioner's release from detention.

*iii. Balance of the Equities and Public Interest*

As detailed above, the last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging Respondents' likely violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citations omitted)); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025

WL 3552298, at *10 (C.D. Cal. Dec. 11, 2025) ("'Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.'" (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005))); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Accordingly, and considering the other factors that the Court has already examined, Petitioner is entitled to immediate release from detention.

C. Bond Requirement

Rule 65 notes that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original)). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (cleaned up). "That is, the mandatory language of Rule 65(c) does not 'absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond.'" *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *8 (C.D. Cal. June 25, 2025) (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003)).

Since the Court is ordering Respondents to follow the governing law, bond is unnecessary. *See Swan v. Tanjuakio*, No. 21-00052 JMS-KJM, 2021 WL 1794756, at *8 (D. Haw. May 5, 2021) ("The court is simply requiring [defendant] to follow the law. No bond is required." (footnote omitted)); *Hassanzadeh v. Warden*, No. ED CV 25-2113-DMG (MAAx), 2025 WL 3306272, at *6 (C.D. Cal. Nov. 25, 2025) (ruling that bond was unnecessary where the court ordered respondents to release immigration detainee from custody and follow the governing law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**



IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Application and **ORDERS** as follows:

1. Respondents must release Petitioner (A No. 246-062-055) immediately under the same terms applicable to him prior to his July 13, 2026 detention.
2. When releasing Petitioner, Respondents must return any property seized from him in the course of his arrest and detention.
3. Respondents are enjoined from re-detaining Petitioner without providing notice and a pre-deprivation hearing before a neutral adjudicator.
4. Respondents are enjoined from transferring Petitioner outside of the Central District of California pending final resolution of his case.

The Court **ORDERS** Respondents to serve a copy of this Order on Petitioner immediately. Respondents must file a declaration by **12:00 p.m. on Thursday, October 1, 2026**, attesting to Petitioner's release. Respondents are further **ORDERED** to show cause, in writing, no later than seven (7) days after this Order issues as to why a preliminary injunction should not issue. Petitioner may file a response no later than seven (7) days after Respondents' filing.

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ